## Commonwealth *v.* Yobbagy, Appellant.

Argued November 13, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*Vincent M. Casey,* with him *Richard S. Graff, Arnold D. Smorto,* and *Margiotti & Casey,* and *Smorto & Creany,* for appellant.

*Harry A. Heilman, Jr.,* District Attorney, with him *D. Dale Claypool,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 19, 1963:

Joseph E. Yobbagy (Yobbagy) and Andrew A. DiEmidio (DiEmidio) on March 15, 1960 were employees of the Commonwealth assigned to the duties of the Mine Drainage Unit of the Sanitary Water Board of the Department of Health.[1]

"On March 15, 1960 [Yobbagy and DiEmidio] inspected the strip mining operation of the P. & L. Coal Company, a partnership of Peary Farester and Lucille E. Farester, his wife. It appeared to DiEmidio that the Faresters were stripping beyond the area for which they had secured a permit from the Sanitary Water Board. After DiEmidio and Yobbagy discussed the possible violation with Peary Farester at the scene of the mining operation, they went to the company's office to examine the permit and the blueprints and maps of the area. Because it was late in the afternoon when they arrived at the office, they agreed to meet there the following morning to discuss the matter further. The next morning [DiEmidio and Yobbagy] and the Faresters met at breakfast and then went to the company's office. Mr. Farester walked up the steps to the office with DiEmidio and Mrs. Farester and Yobbagy followed them. Mrs. Farester said to Yobbagy that she was worried because they would lose everything if they were forced to close their operation for two or three months. Yobbagy said he did not think she needed to worry, and then suggested that she walk down the hall with him."[2]

---

[1] Yobbagy, a water pollution investigator, had been employed for 5 years and DiEmidio, a mine drainage engineer, had been with the department 12 years.

[2] Quoted from the majority opinion of the Superior Court, *Commonwealth v. DiEmidio*, 198 Pa. Superior Ct. 571, 574, 182 A. 2d 537.

Mrs. Farester testified as to what took place *at that time* between Yobbagy and herself: "Q. What did [Yobbagy] say, to the best of your recollection, to you? A. The best of my recollection was that this thing could be taken care of. And at first, I had a hard time getting it through my head exactly what he meant, and finally I said to him, 'Do you mean that this would be a payoff.' And I don't recall his exact words, but he gave me to believe—By the Court: No, what he said as near as you can. A. As near as I can recall [Yobbagy], said, yes, that Mr. DiEmidio could be talked to, that he was the eyes and the ears of the Sanitary Water Board, and only what he saw—. . . . A.—what he saw was reported to the Ebensburg office." Mrs. Farester then told her husband of this conversation with Yobbagy in the hall.

"The four of them [Mr. and Mrs. Farester, DiEmidio and Yobbagy], along with a stenographer and the company's manager, went into the company's office. For a time they examined the permit, a map and other documents together. Then Mr. Farester, the company's business manager, and DiEmidio went into a private office.[3] There DiEmidio told Farester that if he made this 'pay-off' they would see to it that he was not bothered,—that they would take care of it, and the Faresters could hurry up and strip that coal out and back-fill and everything would be all right. Farester said that the company was not able to stand too much, but maybe he could scrape up a couple hundred dollars a piece. A check was then made out for $400 and taken to the bank and cashed by a stenographer who gave the cash to DiEmidio. He put it into his pocket, joined Yobbagy in the other room and the two of them left the company's office together. The Faresters continued to operate without interference but several weeks later

---

[3] Yobbagy did not enter the private office nor was he present when any conversations or transactions took place.

DiEmidio returned alone and collected another $300. DiEmidio subsequently signed a confession admitting the collection of $700. There is no evidence that Yobbagy received any of the money."[4] In DiEmidio's written statement, he stated that he gave none of the money to Yobbagy.

On September 5, 1961, the grand jury of Armstrong County indicted Yobbagy and DiEmidio on the charges of statutory extortion, common law extortion and conspiracy to extort. After a trial before the Honorable J. FRANK GRAFF and a jury, the jury returned a verdict finding DiEmidio guilty of *both* common law extortion and conspiracy to extort and finding Yobbagy guilty of conspiracy only. Motions for a new trial and in arrest of judgment were refused and from the judgment of sentence[5] Yobbagy appealed to the Superior Court. That Court affirmed the judgment of sentence.[6] We granted an allocatur.

The sole question raised upon this appeal is whether the evidence was sufficient to sustain Yobbagy's conviction on the charge of conspiracy.

In passing upon this question certain well established legal principles must guide us: (1) the Commonwealth must be given the benefit of all favorable testimony and all reasonable inferences arising therefrom: *Commonwealth v. Moore,* 398 Pa. 198, 202, 157 A. 2d 65; *Commonwealth v. Wright,* 383 Pa. 532, 536, 119 A. 2d 492; (2) evidence to sustain a charge of conspiracy must be "such as reasonably and naturally justifies an inference of guilt of the accused and is of such volume and quality as to overcome the presumption of inno-

---

[4] Quoted from the majority opinion of the Superior Court, supra, p. 575.

[5] Yobbagy was sentenced to pay a fine and serve three months in jail.

[6] This affirmance was by a divided Court, 5-2, WATKINS, J., filing a dissenting opinion in which MONTGOMERY, J., joined.

cence and satisfy the jury of the accused's guilt beyond a reasonable doubt. [Citing cases]. A conviction will not be allowed to stand if it is based solely upon suspicions and conjectures. [citing a case]": *Commonwealth v. Evans,* 190 Pa. Superior Ct. 179, 201, 202, 154 A. 2d 57. See also: *Commonwealth v. Burdell,* 380 Pa. 43, 49, 110 A. 2d 193; *Benford v. Sanner,* 40 Pa. 9, 17; (3) "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities: [citing a case]. A conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: [citing a case] :". *Commonwealth v. Horvath,* 187 Pa. Superior Ct. 206, 211, 144 A. 2d 489; (4) "The heart of every conspiracy is a *common understanding* no matter how it comes into being": *Commonwealth v. Strantz,* 328 Pa. 33, 43, 195 A. 75; *Commonwealth v. Neff,* 407 Pa. 1, 179 A. 2d 630; *Commonwealth v. Rosen,* 141 Pa. Superior Ct. 272, 277, 14 A. 2d 833; (5) "Even participation in the offense which is the object of the conspiracy does not necessarily prove the participant guilty of conspiracy. The evidence must convince that the defendant did something other than participate in the offense which is the object of the conspiracy. *There must, in addition, thereto, be proof of the unlawful agreement and participation therein, with knowledge of the agreement.*": *Dahly v. U.S.* (C.C.A. 8), 50 F. 2d 37, 43. (emphasis supplied).

Certain facts appear undisputed or unproven upon this record: (1) it is undisputed that Yobbagy was not present when DiEmidio and Mr. Farester discussed a "pay-off", when DiEmidio received any money from

Faresters or when DiEmidio agreed to overlook the violation of the rules of the Sanitary Water Board; (2) there is no proof that Yobbagy knew that DiEmidio had received any money from Faresters or that Yobbagy received, directly or indirectly, any money from Faresters or from DiEmidio. The *sole* testimony upon which the Commonwealth relies to incriminate Yobbagy is that of Mrs. Farester and all that she testified to was that Yobbagy suggested to her "that Mr. DiEmidio could be talked to, that he was the eyes and the ears of the Sanitary Water Board, and only what he saw was reported to the Ebensburg office." From that suggestion of Yobbagy—"that Mr. DiEmidio could be talked to"—the Commonwealth seeks to justify Yobbagy's conviction of conspiracy. The Commonwealth seeks from that suggestion to draw two inferences,— and they can only be inferences—, an inference that Yobbagy meant that DiEmidio, *for a price,* would withhold a report of the violation and a further inference that Yobbagy made the suggestion as the result of an agreement with DiEmidio to extort money from the Faresters. Upon such footing no conviction of a conspiracy should stand.

It was the burden of the Commonwealth to prove, either by direct or circumstantial evidence, beyond a reasonable doubt that Yobbagy had conspired with DiEmidio to extort money from the Faresters. There is not a scintilla of evidence of any such understanding or agreement between Yobbagy and DiEmidio and, absent proof of such understanding, the charge of conspiracy must fall. An inference upon an inference or suspicion and conjecture do not take the place of proof. The standards of proof necessary to sustain a charge of conspiracy are not satisfied merely by a suggestion on the part of one alleged conspirator that his alleged fellow conspirator "can be talked to".

The language of the United States Supreme Court in *Direct Sales Co. v. U.S.*, 319 U.S. 703, 711, 63 S. Ct. 1265, 1269 is appropriate to the situation herein presented: ". . . Without the knowledge, the intent cannot exist. . . . Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal. . . . This, because charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning . . . a dragnet to draw in all substantive crimes." See also: *Ingram v. U.S.*, 360 U.S. 672, 680, 79 S. Ct. 1314, 1320.

Yobbagy may well have intended, when he made this suggestion to Mrs. Farester, that DiEmidio could be "talked to" for a price and it may well be that such suggestion arose as the result of an agreement to that end between Yobbagy and DiEmidio. However, the Commonwealth has failed to so prove in the manner and according to the standard of proof required by the law. That which we said in *Commonwealth v. Neff*, supra (p. 15), is apposite in the case at bar: ". . . In short, the Commonwealth has not proven the formation of an agreement—the gist of the crime of conspiracy—between [DiEmidio and Yobbagy] to accomplish either an unlawful purpose or a lawful purpose by unlawful means."

Judgment reversed.

Mr. Chief Justice BELL dissents.