378 A.2d 393

**COMMONWEALTH of Pennsylvania**

v.

**Robert HENDERSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 22, 1976.

Decided Oct. 6, 1977.

474

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

476

HOFFMAN, Judge:

Appellant contends that the evidence was insufficient to sustain guilty verdicts on indictments charging rape,[1] statutory rape,[2] and criminal conspiracy.[3] We find the evidence sufficient and, therefore, sustain the lower court's refusal to arrest judgment. Appellant also contends that the lower court should have given a tendered instruction that mere presence at the scene of the crime and knowledge of its commission are insufficient standing alone to support a finding of appellant's complicity.[4] We agree and, therefore, grant a new trial.

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 3121.

2. The Crimes Code, supra; 18 Pa.C.S. § 3122. Amended subsequent to the offense, May 18, 1976, P.L. 120, No. 53, § 1, effective in 30 days.

3. The Crimes Code, supra; 18 Pa.C.S. § 903.

4. Appellant also contends that the lower court erred in refusing to allow appellant the right to establish a reasonable mistake of age as a defense to statutory rape as provided in § 3102 of the Crimes Code, in prohibiting appellant from re-opening cross-examination after counsel of appellant's co-defendant elicited new material on cross-examination, in refusing to instruct the jury on the inferences to be drawn from appellant's failure to take flight and from the Commonwealth's failure to introduce better evidence of the prosecutrix's age, in prohibiting appellant from arguing the inferences to be drawn from the failure to flee and from the failure of the Commonwealth to introduce better evidence of the prosecutrix's age, and in refusing to grant appellant's request to have opening and closing arguments transcribed. He also contends that the court imposed an illegal and unconstitutional sentence. Because we vacate the judgment of sentence and grant a new trial, it is unnecessary to reach appellant's other allegations of error.

Subsequent to filing a notice of appeal from the judgment of sentence, appellant petitioned the court to correct approximately 20 alleged inaccuracies in the transcript. The lower court refused to rule on the petition because it believed it was without jurisdiction. Appellant contends that the case should be remanded to a different judge to hold a hearing on the alleged inaccuracies in the transcript. Because we are able to decide this case without resort to the disputed portions of the transcript, it is unnecessary to consider appellant's allegations of error in the transcript.

At trial on February 18–25, 1976, the jury heard the following testimony. The prosecutrix testified that she was born on October 1, 1959, and that on the date of the alleged rape, August 26, 1975, she was 15 years old. On August 25, 1975, at approximately 9:00 p.m., she accompanied a friend named Eric to the front porch of a house about a block from her home. The house belonged to the parents of a friend, Robin. Eric, Robin, the prosecutrix, and several others smoked marijuana until approximately 12:00 midnight; then, Eric and the prosecutrix left together to go home. When they were approximately 30 yards from the prosecutrix's house, appellant and his co-defendant, Alvin Taylor, drove around the corner in appellant's car. Appellant offered her a ride, she accepted and told Eric to leave.

The prosecutrix had known Taylor casually for about 7 months, considered him a friend, and was not afraid of him. She had known appellant for two years, had dated him frequently, and admitted that she had accepted rides from him on 30 to 50 prior occasions with no particular destination in mind. She and appellant had frequently used drugs together.

The prosecutrix entered the car, and the men told her that they planned to drive to "North Philly". The prosecutrix admitted feeling "high" from smoking marijuana and stated that she could not remember any details about the ride until they approached the intersection of Chestnut and Broad Streets in downtown Philadelphia. At this point, Taylor began making threats on the life of one of the prosecutrix's friends. She became fearful and considered getting out of the car. Appellant reassured her: ". . . I really couldn't say why I had gotten afraid, but I had asked them and Robert [appellant] said if they was going to do anything, it would have been done it." Thereafter, the prosecutrix relaxed because she trusted appellant.

At approximately 1:30 a.m., Taylor, appellant, and the prosecutrix arrived at 2601 North Broad Street and entered the parking lot of the Inn Towner Motel. They walked into the lobby, proceeded past a desk clerk and a uniformed

guard, and went up a short flight of stairs to a room rented to friends of Taylor and appellant. The prosecutrix admitted smoking more marijuana but insisted that she could "take care of herself." The prosecutrix's recollection of the next hour and a half was somewhat vague, but she remembers talking, watching television, and joking. She remembered that Taylor pushed the television toward the door but · admitted that the door could be opened without difficulty.

The prosecutrix testified that at approximately 2:00 or 2:30 a.m., appellant said: "You can get anything you want." Then, Taylor said: "You're going to give it up." He then threatened to hurt the prosecutrix and punched her on the side of her head, knocking her to the floor. She started to fight back, but Taylor pushed her onto one of the double beds, removed her dungarees and panties, and forced her to engage in sexual intercourse for the next 25 minutes. The prosecutrix did not ask for appellant's assistance in resisting the attack, but merely watched him as he sat on the next bed "playing with his drugs.". ·

At the conclusion of the assault, the prosecutrix jumped from the bed, ran to the bathroom, locked the door and dressed. During the next 10 minutes, neither man attempted to pursue her. When she finished dressing, she ran from the bathroom, jumped over the television and left the room. As she left, appellant stated that he was next and that he "wanted some face".[5]

The prosecutrix walked down the hall to the lobby, and asked the guard to summon a cab; she did not report the assault to the guard. At approximately 3:30 a.m., she arrived home, woke her mother, obtained money to pay the fare, and reported that she had been raped. Her mother called the police, who drove the prosecutrix to Philadelphia General Hospital.

**5.** When the prosecutrix was asked for an explanation of the meaning of "give me some face", she simply laughed and shook her head indicating that she did not know. Subsequently, appellant's co-defendant stated that the phrase meant "suck my privates".

The prosecutrix's mother corroborated her daughter's testimony in most respects. However, she became confused as to the year of her daughter's birth, stating alternatively that her daughter was born in 1958 or 1959. The prosecutrix's mother also acknowledged that she did not require her daughter to be in the house at any particular time during the summer months.

The Commonwealth then called various hospital personnel. The medical records' librarian could not explain why the year of the prosecutrix's birth had been crossed out and changed from 1958 to 1959, but did verify that the records and reports were those of the prosecutrix. The laboratory technician testified that smears taken from the prosecutrix's cervix, vagina, and vulva tested positively for spermatazoa, but he could not say when intercourse occurred because no tests were performed to determine the age of the spermatazoa. The examining physician testified that he performed general physical and pelvic examinations. He found no evidence of trauma, bruises, cuts, or abrasions. He reported that during the pelvic examination he could only insert one finger into the vagina without acute laceration, which indicated that there had not been a vaginal delivery of a child and that there had been no regular or recent intercourse. He testified that there was evidence of sperm on the vulva, vagina and cervical areas, but acknowledged that sperm may be present several days after intercourse.

A Philadelphia police officer testified that he responded to the prosecutrix's mother's call at about 4:30 a.m. He accompanied the prosecutrix to the hospital and subsequently took her statement. At 8:00 a.m., he drove to the Inn Towner Motel where he saw appellant's car still parked in the lot. He proceeded to the room where the assault occurred and found both men sleeping. A search of the room failed to disclose any evidence of a struggle or of drugs.

Appellant and his co-defendant called several witnesses, including the prosecutrix's neighbor Robin. She denied knowing the prosecutrix's friend Eric or knowing several of the other people who allegedly attended the marijuana party

described by the prosecutrix. She denied that there had been any gathering at all at her house and claimed to have been away from home on the evening in question.

Appellant's co-defendant testified that he accompanied appellant to a friend's house in West Philadelphia and was passing through the prosecutrix's neighborhood on the way to visit friends at the Inn Towner Motel when they encountered her on the street. She asked to go with the two men after discovering that she might obtain more marijuana. He acknowledged that all day prior to the alleged assault he had been interested in having sexual intercourse, but denied communicating that desire to appellant. He admitted that he offered to have sex with the prosecutrix at the motel, but stated that they both lost interest after appellant returned to the room from the bathroom. He claimed that the prosecutrix departed angrily because they would not take her to visit friends in another room. He denied that either man had intercourse with the prosecutrix, consensually or forcibly, on the evening of August 25, or the morning of the 26th.

At the conclusion of trial, appellant tendered numerous points for charge, including the one which is the subject of this appeal: "Mere presence of [appellant] at the scene of the crime and knowledge of its commission do not make [appellant] guilty unless he promoted or aided in its commission." The court refused all of appellant's points for charge and merely charged the jury on the law generally applicable to rape, statutory rape, conspiracy, and accomplice liability. Shortly after retiring, the jury requested additional instructions on the law related to conspiracy. After the court re-read the relevant portion of its previous charge, appellant's attorney reiterated his request that the court instruct the jury that it must find more than mere presence and knowledge of the crime. The court again refused this instruction.

The jury returned a verdict of guilty of all crimes charged. After the denial of timely post-verdict motions, the court sentenced appellant to serve three concurrent

terms of 2 and ½ to 10 years' imprisonment. This appeal followed.

Appellant first contends that the evidence was insufficient to sustain the jury verdicts because the Commonwealth failed to prove more than appellant's mere presence during the commission of the offense. When determining the sufficiency of the evidence after a verdict of guilty, we must read the record in the light most favorable to the Commonwealth. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. McFadden*, 448 Pa. 146, 292 A.2d 358 (1972). We must also determine whether the evidence at trial proved the accused's guilt beyond a reasonable doubt when all of the evidence presented by the Commonwealth is accepted as true and all reasonable inferences are drawn. *Commonwealth v. Yobbagy*, 410 Pa. 172, 188 A.2d 750 (1963); *Commonwealth v. Minnich*, 236 Pa.Super. 285, 344 A.2d 525 (1975); *Commonwealth v. Minor*, 227 Pa.Super. 343, 322 A.2d 717 (1974).

The Commonwealth produced no evidence that appellant had intercourse with the prosecutrix. Appellant's convictions for rape and statutory rape, therefore, are predicated on Taylor's conduct under § 306 of the Crimes Code, which provides in relevant part:

"(b) Conduct of another.—A person is legally accountable for the conduct of another person when:

"(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

"(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

"(3) *he is an accomplice of such other person in the commission of the offense.*" (Emphasis supplied.)

A person is an accomplice to a crime under § 306(b)(3) if he:

"(i) solicits such other person to commit it; or

"(ii) *aids or agrees or attempts to aid such other person in planning or committing it;* or

"(2) his conduct is expressly declared by law to establish his complicity." (Emphasis supplied).

The Crimes Code, supra; 18 Pa.C.S. § 306(c).

Thus, one who aids or agrees or attempts to aid another person in planning or committing an offense may be convicted of the criminal acts of another on proof of the commission of the offense and of the accomplice's complicity therein. The Crimes Code, supra; 18 Pa.C.S. § 306(g).

To "aid and abet" in the commission of a crime, one must possess a shared intent to commit it. *Commonwealth v. Fields*, 460 Pa. 316, 333 A.2d 745 (1975); *Commonwealth v. McFadden*, supra; *Commonwealth v. Strantz*, 328 Pa. 33, 195 A. 75 (1937). While this must often be shown by circumstantial evidence, the proof must be more than would support suspicion or conjecture. *Commonwealth v. Fields*, supra; *Commonwealth v. McFadden*, supra; *Commonwealth v. Yobbagy*, supra. Mere presence at the scene of the crime and knowledge of its commission are not sufficient to prove that one has agreed or attempted to aid or is actually aiding in the commission of an offense. *Commonwealth v. Fields*, supra.

Section 903(a) of the Crimes Code defines the crime of conspiracy as follows:

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

"(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

"(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

If a conspiracy involves multiple criminal objectives, a person is guilty of only one conspiracy as long as such multiple crimes are the object of the same agreement or conspiratorial relationship. The Crimes Code, supra; 18

Pa.C.S. § 903(c). Generally, a conspiracy is punishable in the same manner and is graded as the most serious offense which is the object of the conspiracy. The Crimes Code, supra; 18 Pa.C.S. § 905(a).

 The essence of every conspiracy is a common understanding, no matter how it comes into being, that a particular criminal objective be accomplished. *Commonwealth v. Yobbagy,* supra, *Commonwealth v. Minnich,* supra. Although the evidence must show more than a mere association, "(a) conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of the co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed." *Commonwealth v. Horvath,* 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958). See also *Commonwealth v. Yobbagy,* supra; *Commonwealth v. Minnich,* supra; *Commonwealth v. Minor,* supra. Just as with proof of accomplice liability under § 306, proof of guilt on a charge of conspiracy fails if it shows only that the accused was present at the scene of the crime and knew of its commission. *Commonwealth v. Roscioli,* 454 Pa. 59, 309 A.2d 396 (1973); *Commonwealth v. Garrett,* 423 Pa. 8, 222 A.2d 902 (1966).

 In the instant case, appellant does not dispute the sufficiency of the evidence to support co-defendant's conviction of rape and statutory rape; he only objects to the sufficiency of the evidence to support the jury's findings that he was an accomplice to the crime of statutory and forcible rape or that he conspired to commit rape. Although the evidence was purely circumstantial, we find the evidence sufficient to sustain both findings. Appellant drove the car to the prosecutrix's neighborhood, enticed her into the car, encouraged her not to leave when she became frightened, and supplied her with marijuana which he knew would diminish her ability to resist. The jury could reasonably infer that when appellant said, "You can get anything you want," he was signalling Taylor that the assault could begin. Appellant's passivity during the assault would be consistent

with his approval and shared intent. Appellant's statement that it was his turn next indicates that both men planned to have sexual relations with the prosecutrix. We, therefore, hold that the evidence was sufficient to sustain the jury's findings that appellant was an accomplice and a co-conspirator.

Appellant next contends that the court should have instructed the jury that mere presence at the scene of the crime and his knowledge of its commission are not sufficient standing alone to prove a conspiracy or accomplice liability.

It is well-settled that the trial court is required, when the defendant requests, to illuminate all relevant legal issues for the jury which the facts in evidence present. *Commonwealth v. Moore*, 463 Pa. 317, 323, 344 A.2d 850, 853 (1975) (Concurring Opinion by Roberts, J.); *Commonwealth v. Wilds*, 240 Pa.Super. 278, 362 A.2d 273 (1976). See also, A.B.A. Standards, Trial by Jury, § 4.6 (Approved Draft, 1968). When evaluating the adequacy of a jury charge, we are required to view the charge as a whole. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). We will not reverse unless the court's refusal of a tendered point for charge is prejudicial. *Commonwealth v. Stolzfus*, supra.

In *United States v. Garguilo*, 310 F.2d 249 (2d Cir. 1962), appellant Macchia was convicted of counterfeiting on evidence that he aided and abetted his co-defendant, Ralph Garguilo, in securing the necessary photographic equipment. Garguilo introduced Macchia to the equipment supplier as his "buddy-buddy" and stated that they did everything together. Garguilo then took the supplier aside and proposed that he join in the scheme to produce counterfeit money. Macchia accompanied Garguilo on several subsequent visits to a camera studio when the latter sought instruction on the operation of certain equipment. On at least one of several occasions Macchia accompanied Garguilo to a photo-offset printing shop when Garguilo attempted to have printing plates made with the likenesses of a $10 bill.

The Second Circuit Court of Appeals found the evidence of aiding and abetting to be close but sufficient.[6] Judge Friendly joined by Kaufman, J., found the trial court's charge to be an adequate, if not excellent, statement of the law of aiding and abetting. Nevertheless, the Court reversed the trial court because it found that the trial judge's failure to elucidate the issue of mere presence constituted fundamental error[7] requiring reversal: "Never were the jurors told in plain words that mere presence and guilty knowledge on the part of Macchia would not suffice unless they were also convinced beyond a reasonable doubt that Macchia was doing something to forward the crime—that he was a participant rather than merely a knowing spectator. In the usual case we should not think of finding reversible error in such a charge when there was no objection, or perhaps even if there had been. However, in the exceptional circumstances here presented, and in the light of our powers under 28 U.S.C. § 2106 and F.R.Crim.Proc. 52(b), we believe that the interests of justice as between the Government and Macchia will be best served by reversal and remand for a new trial." 310 F.2d at 254–5.

In *Cooper v. United States*, 123 U.S.App.D.C. 83, 357 F.2d 274 (1966), a divided District of Columbia Circuit Court of Appeals affirmed the robbery convictions of two persons who were clearly identified as having participated in the crime. However, the Court reversed the conviction of a third person whose participation was somewhat more equivocal. Judge Bazelon, whose result was joined by Edgerton, J., adopted the views expressed by the Second Circuit in

6. Chief Judge Lumbard disagreed with the Majority's characterization of the sufficiency of the evidence and stated that he believed that the evidence was completely sufficient. He, nevertheless, concurred in the Majority's finding that the court's instruction was plainly erroneous because it failed to elaborate on the issue of mere presence.

7. We obviously do not mean to imply that the failure to give a jury instruction would amount to plain error. See *Commonwealth v. Wilds*, supra.

*Garguilo.*[8] He stated that when the evidence of direct participation in a crime is absent and the Government's case rests on an accomplice theory, the trial judge has a duty to instruct the jury that mere presence and knowledge of the offense are insufficient to sustain a verdict of guilty. See also *United States v. Terrell,* 474 F.2d 872 (2d Cir. 1973) (Reversing the conviction of the driver of an automobile in which a drug sale was consummated because the court failed to give a mere presence instruction.)

In the instant case, the evidence of appellant's guilt rests solely on testimony that he was present during the criminal episode together with testimony which might imply the existence of a prior agreement to aid and abet the commission of the rape. The court's instruction failed to elucidate the crucial issue of the case. The jury was obviously concerned about the law on the subject of accomplice liability and conspiracy because it requested clarification. The jury may well have believed the undisputed fact that appellant was present in the room on the night of the alleged incident and believed the prosecutrix's testimony that she was raped. Without a more adequate instruction as to the significance of appellant's presence, it is quite possible that the jury decided guilt on these facts alone.

The Commonwealth argues that the trial court's charge when read as a whole adequately covered the subjects of accomplice liability and conspiracy and that the failure to give such a charge was harmless. We cannot agree. The charge does not refer in any way to the significance of appellant's presence; it merely recites in very general terms the law on the subjects of accomplice liability and conspiracy. Moreover, we cannot say that the refusal of appellant's point for charge was harmless. The prosecutrix's recollection of the events prior to the attack was vague and ambiguous due in part to her admitted drugged condition during the 5 to 6 hours before the assault. Her

8. Edgerton, J., in his lead opinion, expressed the view that the evidence of a conspiracy was insufficient, but joined Judge Bazelon's result to form a majority for reversal.

testimony was directly contradicted both by Taylor and by her close friend Robin. Despite the prosecutrix's assertion that both men possessed quantities of drugs, the officer who arrested the men in the motel room four hours after the assault did not find any drugs. Other than the fact that appellant was present prior to and during the assault, the evidence of appellant's participation in a pre-arranged plan to commit rape is largely limited to the two somewhat ambiguous statements. We, therefore, hold that it was reversible error for the court to refuse appellant's tendered instruction that mere presence and knowledge of the commission of the offense without some evidence of an agreement to solicit, aid, or promote its commission would be insufficient to find appellant guilty of being an accomplice or conspirator.

Judgment of sentence vacated; case remanded for a new trial.

VAN der VOORT, J., concurs in the result.

PRICE, J., notes dissent.