416 A.2d 523

**COMMONWEALTH of Pennsylvania**

v.

**Allen CARTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Dec. 7, 1979.

Franklin D. Green, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before VAN der VOORT, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

Allen Carter was tried nonjury on charges of murder, voluntary manslaughter, involuntary manslaughter, robbery, conspiracy to commit murder, and weapons offenses. He was found guilty only of conspiracy.[1] On appeal, following the denial of post trial motions and the imposition of sentence, he contends (1) that the evidence was insufficient to sustain the conviction for conspiracy, and (2) that the trial court erred in denying a motion to suppress certain incriminatory statements. We disagree and affirm.

Conspiracy is defined in Section 903(a) of the Pennsylvania Crimes Code, 18 Pa.C.S.A. § 903(a), as follows:

§ 903. Criminal Conspiracy

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which

---

1. The charges of robbery and weapons offenses were nolle prossed. Appellant was acquitted of the remaining charges.

constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

 The essence of criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972); *Commonwealth v. Henderson*, 249 Pa.Super. 472, 483, 378 A.2d 393, 398 (1977). The crime by its very nature is frequently not susceptible of proof except by circumstantial evidence. *Commonwealth v. Kwatkoski*, 267 Pa.Super. 401, 406 A.2d 1102 (1979); *Commonwealth v. Adams*, 254 Pa.Super. 62, 385 A.2d 525 (1978). "A conspiracy may be inferentially established by showing the relationship, conduct or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed." *Commonwealth v. Horvath*, 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958). See also: *Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Kwatkoski*, supra. In *Commonwealth v. Anderson*, 265 Pa.Super. 494, 500, 402 A.2d 546, 549 (1979), this Court, per Judge Hoffman, said: "Among the circumstances relevant, but not sufficient by themselves, to prove a corrupt confederation are (1) association between alleged conspirators, *Commonwealth v. Perdie*, 249 Pa.Super. 406, 378 A.2d 359 (1977); *Commonwealth v. Minnich*, 236 Pa.Super. 285, 344 A.2d 525 (1975); (2) knowledge of the commission of a crime, *see Commonwealth v. Henderson*, supra; *Commonwealth v. Minnich*, supra; (3) presence at the scene of the crime, *Commonwealth v. Sullivan*, supra; *Commonwealth v. Goodyear*, 235 Pa.Super. 544, 344 A.2d 672 (1975); *Commonwealth v. Manson*, 230 Pa.Super. 527, 327 A.2d 182 (1974); and (4) in some situations, participation in the object of the conspiracy, *Commonwealth v. Wilson*, supra; *Commonwealth v. DiEmidio*, supra [410 Pa. 172, 188 A.2d 750]; *Commonwealth v. Holman*, 237

Pa.Super. 291, 352 A.2d 159 (1975). However, while such circumstances are insufficient standing alone, they may furnish a web of evidence linking an accused to the alleged conspiracy beyond a reasonable doubt 'when viewed in conjunction with each other and in the context in which they occurred.' *Commonwealth v. Clark*, 256 Pa.Super. 97, 103, 389 A.2d 619, 621 (1978)." Nevertheless, the evidence must be of a volume and quality sufficient to overcome the presumption of innocence and satisfy the fact finder of a defendant's guilt beyond a reasonable doubt. A conviction for conspiracy cannot be based on mere suspicion or conjecture. *Commonwealth v. Yobbagy*, 410 Pa. 172, 188 A.2d 750 (1963); *Commonwealth v. Anderson*, supra.

The evidence in the instant case, viewed in the light most favorable to the Commonwealth and drawing proper inferences in favor of the Commonwealth, discloses the following facts. On April 30, 1977, appellant and James Martin, the alleged co-conspirator, went to the Matador Bar in Philadelphia to confront two men who were giving Martin "trouble". Appellant went along to "watch [Martin's] back." Upon entering the bar they observed and approached Glen Roane, one of the men they were seeking. Appellant asked him, "what was all the trouble about?" After Martin and Roane had conversed for a brief period, they left the bar and walked along the street. Appellant went with them, keeping Roane between him and Martin. As Roane was situated between Martin and appellant an argument commenced. A bystander, Ms. Anise Woods, testified that the argument was about money, but she did not hear appellant say anything. She did hear Martin say to Roane, "the only point I'm going to get across to you is to stick some lead in your ass." The men, still with Roane in the middle, began to move back toward the bar. Eventually, Roane broke away and ran to the bar. Martin drew a gun and ran after him, stopping twice to shoot at Roane. The gun merely clicked and did not discharge. Appellant, too, ran after Roane, who reached the bar safely and entered. Martin went in after him and shot him. Thereafter, Martin and appellant fled in

Martin's car. The following day they learned that Roane had died, and they left Philadelphia for Georgia. There they agreed that when questioned they would say that it had been decedent who had the gun. They were subsequently apprehended in Georgia and returned to Pennsylvania.

It seems clear from this brief review of the facts that appellant had gone with Martin for the express purpose of assisting Martin during an anticipated confrontation with Roane. Violence, it could be inferred, was anticipated because of appellant's expressed intention to "watch his [Martin's] back." Appellant's immediate injection of himself into the dispute at the bar, his physical nearness to Roane throughout the confrontation, and his giving chase when Roane ran back to the bar, demonstrated that he was not merely a passive bystander. Finally, his flight to avoid prosecution, when considered with his presence and active participation during the confrontation, permitted an inference that he had been consciously involved in an unlawful confederation. See: *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Jones*, 250 Pa.Super. 471, 378 A.2d 1245 (1978).

The weight to be given to this evidence, of course, was for the trier of the facts. The trial judge who heard the case without a jury concluded that appellant had been guilty of a criminal conspiracy to commit a malicious attack resulting in the shooting death of Glen Roane. Our review persuades us that the evidence was sufficient to support such a finding. See: *Commonwealth v. Illich*, 266 Pa.Super. 513, 405 A.2d 937 (1979); *Commonwealth v. Laurin*, 269 Pa.Super. 368, 409 A.2d 1367 (1979).

Appellant also contends that an incriminatory statement made to Philadelphia police while he was being returned to Pennsylvania should have been suppressed as the fruit of an unlawful arrest in Georgia. The reason for appellant's initial arrest by police in Georgia was not shown at the suppression hearing. However, even if that arrest had been illegal, an issue which cannot be determined from

this record, appellant's statement was not the "fruit" of any such illegality. There is no doubt that the Philadelphia police independently had probable cause to arrest appellant. Appellant's statement was made voluntarily to Philadelphia police after they had properly taken appellant into custody for the purpose of returning him to Pennsylvania and had advised him of his right to remain silent. This statement, therefore, was not tainted by the illegality, if any, which had occurred during the original arrest by Georgia police. See: *Commonwealth v. Jacobs*, 445 Pa. 364, 284 A.2d 717 (1971), *cert. denied*, 409 U.S. 856, 93 S.Ct. 135, 34 L.Ed.2d 100 (1972).

The judgment of sentence is affirmed.