**Commonwealth v. Palmer**

*Patrick Carmody, assistant district attorney,* for the Commonwealth.
*Joseph S. Nescio,* for defendant.

SHENKIN, *J.*, April 20, 1992—Following a preliminary hearing before District Justice Paul Johnson, the defendant was bound over to the Court of Common Pleas on the charges of possession of a controlled substance, possession of a controlled substance with intent to deliver, and criminal conspiracy. Defendant, through his attorney, has now filed a habeas corpus motion, requesting that the charges be dismissed on the basis that there was insufficient evidence presented at the preliminary hearing to establish a prima facie case. The district attorney and defense counsel agree that the motion may be decided on the basis of the preliminary hearing transcript and the defendant's written statement to the police.

The focus of the habeas corpus hearing is to determine whether a prima facie case was established at the preliminary hearing. At such a proceeding, the prosecution bears the burden of establishing at least a prima facie case that a crime has been committed and the accused is the one who committed it. *Commonwealth v. Prado,* 481 Pa. 485, 393 A.2d 8 (1978); *Commonwealth v. Mullin,* 460 Pa. 366, 333 A.2d 755 (1975). Proof of guilt beyond a reasonable doubt is clearly not required at this stage. *Commonwealth v. Rick,* 244 Pa. Super 33, 366 A.2d 302 (1976). Rather, the Commonwealth must show "sufficient probable cause" that the defendant committed the offense. *Commonwealth v. Smith,* 212 Pa. Super. 403, 244 A.2d 787 (1968). The evidence should be such that if presented at trial in court, and accepted as true, the judge would be warranted in allowing the case to go to the jury. *Commonwealth ex rel. Scolio v. Hess,* 149 Pa. Super. 371, 27 A.2d 705 (1942); *Commonwealth v. Wojdak,* 502 Pa. 359, 466 A.2d 996.

The evidence presented by the Commonwealth at the preliminary hearing would support a finding of the following facts. On May 13, 1991, an undercover narcotics agent approached a group of three or four men in the vicinity of Second Avenue in Coatesville. Defendant Ronald Palmer was one of these men. The agent approached the group and asked "Hey, where is everybody?" and "Is anything happening?" Defendant responded "No one is out here right now. What are you looking for?" The agent stated that he "was hoping to get five deuces." Then the agent said "Well, have you seen my man?" When he asked this question, the agent pointed to a nearby residence where the agent believed a certain person from whom he could obtain drugs might be living. It is clear from the agent's testimony at the preliminary hearing that he, the agent, identified the residence in question, had prior knowledge that the residence was one where drugs might be obtained, and was seeking out a particular person whom the agent identified as "his man." We find these facts to be significant in concluding, for reasons more fully set forth below, that under the applicable legal standards the actions of this defendant do not rise to the level of a conspiracy nor render him liable as an accomplice. This defendant's participation in these events was merely incidental. It is clear that the agent had all of the knowledge which he needed to pursue the transaction with or without this particular defendant and there are no facts to indicate a prior agreement between this defendant and the person who sold drugs to this agent nor is there any evidence from which a jury could reasonably conclude that the actions of this defendant were significant in facilitating the commission of this

crime. After the agent asked for "his man" and indicated the residence in which he was interested, the defendant stated that he would go see if "they were home." The defendant and the agent then walked to the residence, the defendant walking a few feet ahead of the agent. Defendant knocked on the door of the residence. When a woman appeared at the door, defendant told her that the agent wanted "five deuces." The woman directed the agent to go across the street. At that point, the defendant returned to the group of men with whom he was originally standing. After the agent crossed the street, the woman exited her residence and crossed the street, at which point she handed the agent a packet of cocaine in exchange for a payment of $20. During this exchange, the agent told the woman that he wanted four additional packets. The woman responded that she would see if she had any more, and returned to her residence. At that point, defendant yelled over to the agent, "Are you straight, man?" The agent responded "Yeah, but she only brought me one deuce and I wanted five." The agent testified that the defendant then said, "Well, I told you I would hook you up," although there is no other evidence to indicate that the defendant had said any such thing to the agent. Moments later, the woman again exited the residence and crossed the street. At that point, the woman and the agent went into the hallway of an apartment building. In the hallway, the woman sold and delivered to the agent an additional packet of cocaine for $60.

Immediately following his arrest on August 7, 1991, the defendant made a written statement to the police. In the statement, the defendant indicated that he took

the agent to the woman's residence because "He [the agent] asked if she was home." The defendant admitted that he knew that the woman was selling cocaine and that the agent was trying to buy cocaine. Defendant also indicated that he had never taken anyone to that apartment to buy cocaine before; that this was the first time he had done so.

Criminal conspiracy is defined in 18 Pa.C.S. §903 as follows:

"A. *Definition of conspiracy*—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

The essence of every criminal conspiracy is a common understanding, no matter how it comes into being. *Commonwealth v. Yobbagy,* 410 Pa. 172, 188 A.2d 750 (1963). A conspiracy can be inferentially established by showing the relationship, conduct or circumstances of the party, and overt action on the part of the co-conspirators has uniformly been held competent to prove that a corrupt confederation has in fact been formed. *Commonwealth v. Lanager,* 360 Pa. Super. 578, 521 A.2d 53 (1987): *Commonwealth v. Horvath,* 187 Pa. Super. 206, 144 A.2d 489 (1958). However, "proof of guilt on a charge of conspiracy fails if it shows only that the accused was present at the scene of the crime and knew of its commission." *Commonwealth*

*v. Henderson,* 249 Pa. Super. 472, 480, 378 A.2d 393, 398 (1977). As the Superior Court has stated:

"Proof of a common understanding among the alleged co-conspirators is an indispensable element of the crime. Thus, the courts have held that mere association is not sufficient;... nor is mere presence at the scene of the crime sufficient to prove the agreement without a showing that the accused had prior knowledge of his alleged co-conspirator's criminal intent. Indeed, one's knowledge that another proposes unlawful action will not establish a conspiracy,... absent proof that the accused became an active partner in the criminal enterprise with knowledge of the agreement." *Commonwealth v. Lynch,* 270 Pa. Super. 554, 570, 411 A.2d 1224, 1232 (1979). (emphasis in original)

The essence of defendant's argument is that the Commonwealth failed to prove the existence of a prior unlawful agreement, shared criminal intent or association between the seller and himself. Defendant correctly analogizes the instant case to *Commonwealth v. Evangelista,* 8 D.&C.3d 566 (1978). Faced with a set of facts virtually identical to those involved here, the *Evangelista* court sustained defendant's demurrer, finding that such facts were insufficient to support a conviction for a conspiracy to deliver a controlled substance. In *Evangelista,* a narcotic agent approached defendant and asked about buying some narcotics. The defendant stated that another person might have some. At the agent's request, the defendant approached that person's car and learned that the seller had certain types of narcotics. Defendant then related this information to the agent and was then instructed to find out if the agent could buy some "coke." The seller agreed to sell to the agent, at which point the defendant and the agent approached the seller's car, where the agent

purchased narcotics. While the transaction was occurring, the defendant was behind the agent, did no talking, received no money, did not touch the substance and after the agent completed the transaction, the parties separated. We cannot help but note that the involvement of the defendant in the *Evangelista* case is more extensive than the involvement of the defendant in the transaction in this case and yet, even in *Evangelista,* the court there found that the evidence could not be found to have made out the commission of a crime by the defendant.

The *Evangelista* court distinguishes *Commonwealth v. Cameron,* 247 Pa. Super. 435, 372 A.2d 904 (1977), where defendant was convicted of conspiracy to deliver heroin. In *Cameron,* defendant was approached by two narcotic agents seeking heroin. Defendant took agent to house no. 1 where defendant passed heroin from seller to agents. Defendant then took agents to house no. 2 where occupant was reluctant to sell to agents (complaining that defendant was always bringing unknown buyers) until defendant vouched for agents and sale was eventually made. Finally, two days later, defendant returned to house no. 1 where agents bought directly from occupant. In sustaining the defendant's conviction, the *Cameron* court stated that in transactions two and three, the jury properly inferred an agreement between defendant and supplier. In transaction two it was apparent that defendant was regularly bringing buyers to the seller indicating a continuing agreement between defendant and seller. An agreement could also be inferred in transaction three, based on defendant's participation in transaction one which involved the same seller. *Commonwealth v. Evangelista, supra,* 8 D.&C.3d at 569.

The *Evangelista* court stated that in *Cameron*, defendants' personal assistance in each transaction was important, and that there he was "more than a mere guide to the potential suppliers, for without his help the agents had virtually no chance of completing any transaction." In contrast, in the *Evangelista* case, it was well known that the seller conducted business regularly at a certain location, so there were many who could have given the agent the information he received from the defendant. In the instant case, the agent already had the information as to the location of the seller and in fact gave defendant every reason to believe that the agent, could consummate the transaction without help from the defendant or anyone else. In *Evangelista,* the extent of defendant's participation was to bring together a willing seller and a willing buyer; he had nothing to do with the terms of the sale or the sale itself. Defendant had no agreement with seller that seller would sell to agent, and unlike *Cameron* there was no evidence of prior dealings between defendant and seller. *Id.* at 569-570. The court stated that if there were any agreement here, it was the agreement between defendant and agent that defendant would try to direct agent to a place or person where the agent could get what he asked for. There was no showing of any agreement between defendant and seller to sell the drugs to agent. *Id.* at 571. The similarity of the facts in *Evangelista* to the facts in the present case is striking and although we are not bound by the decision in *Evangelista,* we find its reasoning quite persuasive and we choose to follow it.

Several appellate cases are instructive, although each one contains facts which distinguish it from the instant case. In *Commonwealth v. Stephens,* 231 Pa. Super. 481, 331 A.2d 719 (1974), the accused was standing

nearby when his alleged co-conspirator offered to sell marijuana to a plain clothes police officer. From Stephens' mute and unresponsive reaction to the unlawful deal, the Commonwealth sought to infer that he had prior knowledge of the deal and in fact made an agreement prior to it. The Superior Court rejected this contention noting that the evidence, while supporting an inference of knowledge, cannot support the further inference of agreement. Similarly, in *Commonwealth v. Goodyear,* 235 Pa. Super. 544, 344 A.2d 672 (1975), the accused was present and had knowledge that his brother gave purported marijuana to a 9-year-old boy. Upon such facts, the Superior Court could find no evidence of an agreement to corrupt the morals of the boy.

On the other hand, in *Commonwealth v. Davenport,* 307 Pa. Super. 102, 452 A.2d 1058 (1982), the Superior Court upheld the defendant's conspiracy conviction where defendant was cognizant of the terms of the heroin sale, handled the money and drugs during the transaction and inquired if the undercover agent had the correct amount to effectuate the purchase. Defendant even secured change from a nearby tavern when co-defendant had none. The court stated that these were overt acts by the accused from which an active participation in a conspiracy could be inferred. In *Commonwealth v. Lanager,* 360 Pa. Super. 578, 521 A.2d 53 (1987), the Superior Court reversed the trial court's arrest of judgment, holding that the evidence permitted finding of conspiracies to distribute controlled substances. The evidence established that the defendant agreed to secure drugs for undercover agents. There was direct proof of the defendant being in possession of drugs shortly after they were seen being dispensed

out of bottles by a dealer to the defendant. The court stated that the defendant was not an innocent bystander caught in the middle of a drug transaction. Rather, he was an active partner in the effectuation of the sale and purchase. A subsequent conspiracy was shown to the court's satisfaction where the defendant voiced his demand for some form of remuneration for setting up the deal.

The present case also differs from *Commonwealth v. Minnich,* 236 Pa. Super. 285, 344 A.2d 525 (1975), where defendant approached narcotic agents asking them if they wanted to buy some LSD and then arranged for the sale, and before the sale was actually made, informed the agents of the price. The court stated that the circumstances of purchase indicated that a common understanding between defendant and seller had taken place. Defendant had more than mere knowledge that the seller would make the transaction. Defendant had initiated the discussion of a possible sale with the narcotic agents and later guided them to the place of sale.

As noted above, we find this case to be strikingly similar to *Commonwealth v. Evangelista, supra.* The most significant of the factual similarities are that defendant did not participate in the physical transfer of drugs or money, defendant did not receive any remuneration from the seller and there was no evidence of prior dealings between defendant and the seller. As in the *Evangelista* case, there are no facts from which it could reasonably be inferred that defendant had an agreement with seller to sell to the agent. Even viewing the evidence in the light most favorable to the Commonwealth, we do not believe that such evidence would permit a jury to return a finding of guilty against de-

470

fendant as to the conspiracy or other charges against him.

We acknowledge that defendant's conduct is not far from such as would render him an accomplice to the criminal activity which took place. He was present at the scene and clearly knew that a crime had been committed. However, these factors alone do not render one liable as an accomplice. The defendant's further activity in ascertaining that the seller was in fact home and conveying to her the information which he had received from the agent were merely incidental to the transaction and would not support a finding that the defendant's personal assistance was important nor that his participation aided the seller in the planning or commission of the offense.

Accordingly, for the reasons set forth above, we hereby issue the following

### ORDER

And now, April 20, 1992, upon motion of counsel for defendant, defendant's motion for writ of habeas corpus is granted and the charges against this defendant are dismissed.