AMBRO, Circuit Judge,
concurring in part and dissenting in part.
I would grant Mr. Gibbs habeas relief on his double-jeopardy claim. Even viewing the record in the light most favorable to the Commonwealth and affording its state-court decisions the deference owed under 28 U.S.C. § 2254(e), I believe no reasonable juror could conclude that the Commonwealth sustained its burden of proving two separate conspiracies beyond a reasonable doubt. I thus partially dissent.[1]
*67 A person who conspires “to commit a number of crimes .. . is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.” 18 Pa. Cons.Stat. Ann. § 903(c). Because conspiracies often involve a number of su-bagreements, distinguishing between a single conspiracy and multiple conspiracies can be a challenging task. The key is to determine whether there is “but one scheme, one enterprise, one conspiratorial web.” United States v. McBrown, 149 F.3d 1176 (5th Cir.1998) (quoting United States v. Rodriguez, 585 F.2d 1234, 1249 (5th Cir.1978), on reh’g, 612 F.2d 906 (5th Cir.1980), aff'd sub nom. Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)). If a court erroneously treats “each stitch in that web ... as a separate conspiracy, infinite bases for liability could be confected.” Rodriguez, 585 F.2d at 1250.
Pennsylvania courts consider the totality of the circumstances to aid in this endeavor. Commonwealth v. Barnes, 871 A.2d 812, 820 (Pa.Super.Ct.2005), aff'd, 592 Pa. 301, 924 A.2d 1202. (2007). Although the precise test is flexible, the seven factors most commonly considered are: “[t]he number of overt acts in common”; “the locations in which the alleged acts took place”; “the time period during which the alleged acts took place”; “the extent to which the purported conspiracies share a common objective”; “the degree to which interdependence is needed for the overall operation to succeed”; “the similarity in methods of operation”; and “the overlap of personnel.” Commonwealth v. Andrews, 564 Pa. 321, 768 A.2d 309, 316 (2001) (quoting Commonwealth v. Koehler, 558 Pa. 334, 737 A.2d 225, 245 (1999)). Application of these factors to the facts of this case leads me to conclude the two supposedly separate conspiracies were but one.
(1) Common Overt Acts: As my colleagues concede, the Superior Court started off on the wrong foot by finding, without any support in the record, that Gibbs engaged in the act of target practice the day before the shooting to further the Wayne Burke (but not the Mehl) conspiracy. No target practice by Gibbs ever occurred; it was Jennifer Dean who practiced shooting the gun, and that happened the day of the shooting. The acts of the two conspiracies were precisely the same, including Gibbs changing into less conspicuous clothes, Sharon Burke providing a gun and driving to Hemlock Farms, and Gibbs firing shots that killed Mehl but were aimed at Wayne Burke.
(2) Locations of the Overt Acts: Equally devoid of record support is the state court’s finding that “[cjonversations with [Gibbs] concerning the planning and execution of Mr. Burke’s murder occurred on the telephone, at Sharon Burke’s home, and at a business establishment,” while “[t]he discussions over what to do about Mr. Mehl ... were conducted at the Burke home and in the car on the way to Hemlock farms.” In fact, Gibbs never spoke of Wayne Burke’s murder “at a business establishment,” and Gibbs also discussed killing Burke in transit to Hemlock Farms together with the conversation concerning Mehl. The conspiracies thus overlapped in their geographic scopes.
(3) Time Period of the Overt Acts: Not only did the overt acts occur at identical locations, they took place at identical times. My colleagues conclude this factor weighs in the opposite direction by focusing on the point in time the different agreements were formed. But the relevant inquiry is not “the precise time at which each objective [of a single continuing conspiracy] was conceived.” Andrews, 768 A.2d at 316 (quoting Model Penal Code § 5.03 explanatory note). -Rather,' it is the *68 sequence and span of the overt acts and whether “the second object was agreed to before attainment of the first.” Developments in the Law — Conspiracy, 72 Harv. L.Rev. 920, 930 (1959); see also United States v. Rigas, 605 F.3d 194, 213 (3d Cir.2010). Here, because the overt acts occurred in a continuous, uninterrupted sequence and because the timeframe of the Mehl conspiracy was subsumed within that pertaining to the attempted murder of Wayne Burke, this factor augurs in favor of Gibbs.
(k) Presence of Common Objective: I also disagree with the majority that the conspiracies were not united by a single overarching purpose: to murder Wayne Burke. In identifying the goal of harming or killing Mehl as a second, independent objective, the majority fails to recognize that the assault or attempted murder of Mehl was never the group’s ultimate goal. See, e.g., Commonwealth v. Lore, 338 Pa.Super. 42, 487 A.2d 841, 855 (1984) (concluding there was only a single conspiracy where the coconspirators agreed to commit separate criminal acts all aimed at the ultimate goal of avoiding detection for murder). As Bonnie Hagan Sullivan testified at trial, Sharon Burke instructed Gibbs that “ ‘if you have to injure [Mehl] to get through Wayne [Burke] injure him,’ but ... ‘don’t just shoot him and then shoot Wayne, try not to kill him.’ ... Then, at some point, [Sharon said] ‘well, if you have to go through [Mehl] to get to Wayne, then go through him to get to Wayne.’ ” Bottom line: the overall goal remained the same.
(5)Interdependence of the Schemes: Closely related to whether there was one overarching goal is the degree of interdependence between the schemes. This element weighs in favor of a single conspiracy where the evidence indicates that one aspect of the scheme is “necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture.” United States v. Kelly, 892 F.2d 255, 259 (3d Cir.1989) (quoting United States v. DeVarona, 872 F.2d 114, 118 (5th Cir.1989)). As the trial judge aptly noted, the purported agreement to kill Mehl was a “contingent conspiracy” — the coconspira-tors saw no point to injuring or killing him save for facilitating Wayne Burke’s murder. Thus, despite my colleagues’ and the state court’s failure to consider this factor, it also supports a single conspiracy.
(6) Similarity of the Methods of Operation: Analysis of the sixth relevant factor is likewise nowhere to be found in my colleagues’ and the state court’s opinions, though the methods of operation were identical. Gibbs purportedly aimed the gun barrel at both men at precisely the same time and did nothing to further the murder of Mehl that he had not already done to further his attempted murder of Burke.
(7) Overlap in Personnel: Finally, it seems clear to me that the same group of individuals were involved in both parts of the scheme, as not one of the four women (Sharon Burke, Jennifer Dean, Bonnie Ha-gan Sullivan, and Betsy Burke) left Gibbs’s side the night of the murder as preparations took place in the Burke trailer and during the drive to Hemlock Farms. In concluding that “the record is notably devoid of any evidence tending to show that” anyone other than Gibbs and Sharon Burke “agreed with or provided aid to th[e] facet of the plan” concerning Mehl, my colleagues overlook that an agreement to partake in criminal activity “need not be formal by express words” — it “may be inferred from concerted action.” Commonwealth v. DiEmidio, 198 Pa.Super. 571, 182 A.2d 537, 540 (1962), rev’d on other grounds, 410 Pa. 172, 188 A.2d 750 (1963). Thus, that Jennifer, Bonnie, and Betsy *69 “stood by silently” while Mehl was discussed is sufficient evidence to conclude they “acquiescefd] in th[e] enlarged criminal enterprise.” State v. Crosswell, 223 Conn. 243, 612 A.2d 1174, 1181 (1992) (emphasis added).
In addition to all seven factors weighing in Gibbs favor, I cannot ignore that the Commonwealth has made its own bed. Both in its opening and closing arguments at trial, it argued that all the charged activities, including the murder of Mehl, were part of a single, ongoing plan to kill Wayne Burke. Moreover, the Commonwealth’s position on appeal that Jennifer Dean, Bonnie Hagan Sullivan, and Betsy Burke did not participate in Mehl’s murder is curious given that all three pled guilty for their role in that crime (just as they did for their role in the attempted murder of Wayne Burke). Though I don’t mean to suggest that tack was improper, prosecutors cannot urge “courts [to] take a broad view of conspiracy” at trial to secure convictions yet advocate for “a narrow view in reviewing a ... double jeopardy claim.” United States v. Ashland-Warren, Inc., 537 F.Supp. 433, 449 (M.D.Tenn.1982). The easy manipulation of the conspiracy doctrine may make it the “darling of the modem prosecutor’s nursery,” Harrison v. United States, 7 F.2d 259, 263 (2d Cir.1925) (Hand, J.), but there must be limits to allowing “substantive law [to be used as] an empty container. whose content [the prosecution] may regulate at its pleasure,” Ashlandr-Warren, 537 F.Supp. at 449.
Despite my belief that Gibbs’s conspiracy convictions violate the Double Jeopardy Clause, I would reject his invitation to grant him a new trial for that violation. Where, as here, the multiple conspiracy “counts are not inconsistent, but instead overlapping,” retrial is not the appropriate remedy. United States v. Mori, 444 F.2d 240, 246 (5th Cir.1971). However, to the extent the Commonwealth argues the constitutional violation may be remedied simply by re-imposing a general sentence without vacating one of the conspiracy convictions, that approach would also be incorrect. United States v. Ward, 626 F.3d 179, 185 n. 8 (3d Cir.2010). The proper remedy is for the state court to vacate one of the conspiracy convictions and resen-tence him on the remaining counts.
Because I part ways with my colleagues on Mr. Gibbs’s double-jeopardy claim, I respectfully dissent in part.

. For the reasons stated by my colleagues, I agree Gibbs is not entitled to a Certificate of Appealability on the issue of whether admission of the' psychiatric testimony violated his Fifth Amendment rights.