J-S50042-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: B.H., A MINOR | : | No. 3272 EDA 2019 |

Appeal from the Dispositional Order Entered October 17, 2019
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0000255-2019

BEFORE:    BENDER, P.J.E., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.:                    **FILED:  MAY 14, 2021**

Appellant, B.H., appeals from the dispositional order[1] entered on October 17, 2019, following his adjudication of delinquency for robbery, conspiracy, simple assault, and criminal attempt.[2]  Upon review, we affirm.

We provide the following background.  On December 11, 2018, a group of teenagers assaulted Edward Holt while attempting to steal his cell phone on the Philadelphia subway. Three months later, police arrested Appellant in connection with the incident.  Following a detention/shelter-care hearing pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6301–6375, the juvenile court placed Appellant on in-home detention with GPS monitoring.  The Commonwealth filed a juvenile petition, which it later amended, averring

---

[1]  We have corrected the caption to reflect that the appeal is from the dispositional order.

[2]  18 Pa.C.S. §§ 3701(A)(1)(iv), 903, 2701(A), and 901(a), respectively.

*Retired Senior Judge assigned to the Superior Court.

that Appellant engaged in the aforementioned delinquent acts, as well as aggravated assault and recklessly endangering another person ("REAP").[3]

At the adjudicatory hearing on September 23, 2019, Holt was the Commonwealth's sole witness. Holt described sitting in a window seat on the subway going northbound along the Broad Street line around 2:30 p.m. on December 11, 2018. N.T., 9/23/19, at 5. He was leaning his head against the window while playing a game on his cell phone. *Id.* at 6–7. Suddenly, five male individuals approached Holt from the aisle of the subway and started punching Holt in his head with closed fists. *Id.* at 7–8. Holt estimated that he experienced "a barrage of about 10 punches" around the left side of his face, jaw, and top of his head. *Id.* Holt heard someone yell "grab his cell phone." *Id.* at 7. While Holt clutched his phone tightly, multiple people tried to grab the phone but were unsuccessful. *Id.* As Holt got to his feet, the subway doors opened and all the individuals except one ran out of the subway.[4] *Id.* at 7–8. Holt exited the subway at a subsequent stop and reported the incident to subway personnel. *Id.* at 8. He ultimately went to the hospital, where he underwent a CAT scan and x-ray. *Id.* at 9.

---

[3] 18 Pa.C.S. §§ 2702(A)(1) and 2705, respectively.

[4] Although Holt did not describe what happened to the one remaining individual, video evidence discussed *infra* showed that this individual ultimately exited the train at that stop as well. The juvenile court later determined this individual was Appellant.

During the incident, Holt sustained a broken pinky finger, multiple welts on his head, and a bruise on his right calf. *Id.* at 9–10.

While Holt was on the witness stand, the Commonwealth played two video clips, identified as Exhibit C-1, from the subway surveillance camera of the car where Holt was sitting at the time of the incident. N.T., 9/23/19, at 10–12; Exhibit C-1, N.T., 9/23/19, at 10. The first clip was approximately two minutes long. N.T., 9/23/19, at 12. It shows the time leading up to the attack, the attack itself, and the aftermath. *See id.* at Exhibit C-1. Holt identified himself and stated that the video was a fair and accurate representation of the subway and incident that day. *Id.* at 11. Holt identified the second clip as showing the car from the reverse angle, putting him out of frame. *Id.* at 12. The second clip shows a close-up facial view of one of the teenagers in the group.[5] *See id.* at Exhibit C-1. The Commonwealth did not ask Holt to narrate the video or identify his attackers. *See id.* at 11–12. At the juvenile court's request, both video clips were played a second time. *Id.* at 13. The videos were admitted without objection from Appellant. *Id.* at 14.

Following the close of the Commonwealth's case, Appellant moved for a judgment of acquittal. N.T., 9/23/19, at 14. He argued there was insufficient evidence to establish a risk of serious bodily injury to Holt. *Id.*

---

[5] The juvenile court later determined this individual was Appellant. N.T., 9/23/19, at 24–25.

at 14–15. The juvenile court agreed and dismissed the aggravated assault and REAP charges. *Id.* at 17. Relevant to this appeal, Appellant also argued that he was merely present at the scene and did not participate in the attack. *Id.* at 15. The juvenile court denied his motion for acquittal on this basis.

Appellant did not present any evidence in his defense. The juvenile court watched the first video clip a third time and determined Appellant was not merely present at the scene, but there was "a sufficient web of evidence" that showed Appellant conspired with the others to attack and rob Holt and was an accomplice to the crimes. N.T., 9/23/19, at 25. According to the juvenile court, the video showed Appellant "scoping out" and "confront[ing] the victim." *Id.* Further, the juvenile court found that Appellant required rehabilitation, treatment, and supervision. *Id.* at 27. Accordingly, the juvenile court adjudicated Appellant delinquent on the remaining charges. *Id.* The court noted Appellant had three other open and deferred delinquency cases. The juvenile court ordered the probation officer to conduct a home and school investigation and scheduled the matter for a dispositional hearing on October 9, 2019. *Id.* at 26–28. It issued an order to this effect following the hearing. *See generally* Adjudicatory/Dispositional Order, 9/23/19.

On October 3, 2019, Appellant filed a Motion for Extraordinary Relief, again arguing that he was merely present on the subway and that

insufficient evidence existed to establish an agreement with the attackers. Appellant noted that Holt did not identify him or describe what Appellant was doing during the incident, and he averred that the case rested on the juvenile court's interpretation of his movements on the subway depicted on the video. Motion for Extraordinary Relief, 10/3/2019, at ¶¶ 18, 26–29.

The dispositional hearing, which had been rescheduled from its original date, occurred on October 17, 2019. During the hearing, the juvenile court referenced Appellant's Motion for Extraordinary Relief and stated it denied the motion. N.T., 10/17/19, at 6. It also ordered Appellant to be placed in a residential facility at Mitchell Residential Program–St. Gabriel's.[6] Dispositional Hearing Order, 10/17/19, at 1.

Fourteen days after entry of the October 17, 2019 dispositional order, Appellant filed a second motion, which he also entitled, Motion for Extraordinary Relief. This time, he sought to attend his home school rather

_____

[6] The Honorable Richard J. Gordon presided over Appellant's adjudicatory hearing and the first portion of Appellant's October 17, 2019 dispositional hearing. Midway through the hearing, Judge Gordon transferred the matter to the Honorable Robert J. Rebstock, who was overseeing Appellant's other delinquency cases. The certified record does not contain the transcript of the second portion of the dispositional hearing in front of Judge Rebstock, but following the hearing, Judge Rebstock signed the October 17, 2019 order imposing Appellant's disposition.

than the school at the residential facility where he was placed. Motion for Extraordinary Relief, 10/31/19.[7]

Appellant filed a notice of appeal on November 15, 2019, from the October 17, 2019 dispositional order. Both Appellant and the juvenile court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents one issue on appeal:

> Whether the adjudications for conspiracy, robbery[,] and related offenses violated state law and due process rights because the evidence was legally insufficient to establish beyond a reasonable doubt that this juvenile was present, and agreed with and intentionally aided others to commit a crime.

Appellant's Brief at 3 (unnecessary capitalization omitted).

Before we address the merits of Appellant's issue, we must determine whether Appellant's appeal is properly before this Court. On January 8, 2020, this Court directed Appellant to show cause why this Court should not quash this appeal as interlocutory, pointing to the Adjudicatory/Dispositional Hearing Order entered on September 23, 2019, and the lack of indication on the docket that the juvenile court had resolved the October 3, 2019 post-dispositional motion. Appellant filed a response. On January 21, 2020, this Court discharged the rule to show cause and referred the issue to this panel.

---

[7] Because the record does not contain the transcript from the second portion of Appellant's dispositional hearing, it is not clear whether the October 31, 2019 motion sought reconsideration of the disposition relating to education or was a new request to modify the disposition. The record does not indicate the outcome of the motion.

Upon review, we agree with Appellant that he timely filed his appeal from a final order. "In juvenile proceedings, the final order from which a direct appeal may be taken is the order of disposition, entered after the juvenile is adjudicated delinquent." *Commonwealth v. S.F.*, 912 A.2d 887, 889 (Pa. Super. 2006) (unnecessary capitalization omitted). Although the September 23, 2019 order is entitled Adjudicatory/Dispositional Hearing Order, the contents of the order, the juvenile court's statements at the September 23, 2019 hearing, and the court's scheduling of a dispositional hearing indicate that the September 23, 2019 order was not a final order. *See* Adjudicatory/Dispositional Hearing Order, 9/23/19, at 1; N.T., 9/23/19, at 28. Instead, the October 17, 2019 order constituted the final appealable order because it addressed Appellant's disposition, including ordering Appellant to be placed in a residential facility.

Moreover, Appellant's two motions for extraordinary relief did not affect the timeliness of the notice of appeal or appealability of the October 17, 2019 dispositional order. In juvenile court, post-dispositional motions are optional, but if they are filed, they must be filed within ten days of the dispositional order. Pa.R.J.C.P. 620(A)(1), (B)(1). The October 3, 2019 motion for extraordinary relief was not a post-dispositional motion because it had been filed prior to the disposition and was denied at the dispositional hearing. To the extent Appellant intended the October 31, 2019 motion to operate as a post-dispositional motion, it was untimely filed. "If a post-

dispositional motion is not timely filed, a notice of appeal shall be filed within thirty days of the date of entry of the dispositional order." Pa.R.J.C.P. 620(B)(3). Appellant's notice of appeal was filed within thirty days of the October 17, 2019 order, rendering the filing of the appeal timely.

To the extent Appellant intended the October 31, 2019 motion to operate as a motion for modification pursuant to Pa.R.J.C.P. 610, the pending motion did not affect the finality of the dispositional order. Juveniles may seek to modify their disposition outside of the post-dispositional timeframe. *See* Note to Pa.R.J.C.P. 610 ("The juvenile may file a motion requesting a hearing when there is a need for change in treatment or services."). Although a final order generally disposes of all issues and all parties, *see* Pa.R.A.P. 341(b)(1), the disposition in juvenile-delinquency matters is subject to further review, and future proceedings are always contemplated. *See In re M.D.*, 839 A.2d 1116, 1119–1120 (Pa. Super. 2003) (observing that the disposition "is subject to frequent, mandatory review by the [juvenile] court"); *see also In re C.R.*, 113 A.3d 328, 333 (Pa. Super. 2015) (determining juvenile's filing of an "appeal would not divest the juvenile court of its reviewing authority, as it is required to continually evaluate events and circumstances that occur after the original disposition"). Furthermore, Appellant sought to modify one aspect of his disposition, which is unrelated to the issue he presents on appeal related to

his adjudication. Accordingly, Appellant filed a timely appeal from a final dispositional order, and the appeal is properly before us.

We turn now to Appellant's challenge to the sufficiency of the evidence. The same standard of review applies when reviewing a challenge to the sufficiency of the evidence supporting a juvenile adjudication as in a challenge to the sufficiency of the evidence in an adult criminal case. ***In Interest of J.B.***, 189 A.3d 390, 414 (Pa. 2018). "Because evidentiary sufficiency is a pure question of law, our standard of review is *de novo* and our scope of review is plenary." ***Id.*** at 414 n.24 (citation omitted).

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.,* 66 A.3d 341, 348–349 (Pa. Super. 2013) (citation and quotation marks omitted). "The finder of fact is free to believe some, all, or none of the evidence presented." *In Interest of J.G.*, 145 A.3d 1179, 1188 (Pa. Super. 2016).

There are two aspects to Appellant's sufficiency challenge. First, Appellant argues that the Commonwealth failed to prove Appellant's identity as one of the five teenagers on the subway. Appellant points out that Holt, the Commonwealth's sole witness, neither identified Appellant as one of the five teenagers on the video nor made an in-court identification. Appellant's Brief at 11–13.

To adjudicate a juvenile delinquent, the Commonwealth must prove beyond a reasonable doubt the identity of the accused juvenile as the person who committed the delinquent act. *In re K.A.T., Jr.,* 69 A.3d 691, 696 (Pa. Super. 2013). The two cases relied upon by Appellant, *Commonwealth v. Crews*, 260 A.2d 771 (Pa. 1970), and *Commonwealth v. Grahame*, 482 A.2d 255 (1984), are inapposite. Neither *Crews* nor *Grahame* involved video evidence of the acts as they unfolded, as herein. In the instant case, the Commonwealth relied upon surveillance video that was admitted without objection. One video clip depicted the attack. Another provided a clear view of one perpetrator's face. After viewing the video and observing Appellant in court, the juvenile court determined the perpetrator in full view was Appellant. It was within the province of the juvenile court as the factfinder

to do so. *See Commonwealth v. Childs*, 63 A.3d 323, 327 (Pa. Super. 2013) (holding factfinder may "draw its own conclusions" as to defendant's identity after viewing surveillance video); *accord Commonwealth v. Palmer*, 192 A.3d 85, 101 (Pa. Super. 2018) ("The jury itself watched the videos, and was free to reach a different conclusion if it disagreed with [police detective's] conclusion that it was [the defendant] depicted on the video at specific moments in the footage."). Accordingly, Appellant's argument that the Commonwealth did not prove Appellant's identity beyond a reasonable doubt fails.

We turn now to Appellant's second argument, which he poses as an alternative to his first. Appellant's Brief at 14–18. Appellant posits that the Commonwealth failed to establish sufficient evidence that he was an accomplice of, or conspired with, the other four teenagers on the subway. He does not contest the sufficiency of evidence demonstrating that the attack on Holt constituted a robbery, simple assault, and attempted theft by unlawful taking. Instead, Appellant argues he was merely present at the time of the attack, and the Commonwealth failed to prove he intentionally entered into a conspiratorial agreement to commit criminal activity or intentionally aided or promoted criminal activity. *Id.*

Appellant claims the juvenile court's conclusion that Appellant acted as the "look out" is "speculative" and "conjecture based on small ambiguous bodily movements." Appellant's Brief at 14. According to Appellant, even if

one could infer from the video that Appellant conspired with, or was an accomplice of, the other four teenagers, the video "certainly also supports the opposite inference of innocent non-participation in the criminal activity of the assailants." *Id.* at 17. He suggests, relying on *Interest of J.B.*, 189 A.3d 390, "Where a party on whom rests the burden of proof in either a criminal or civil case offers evidence consistent with two opposing propositions, he proves neither." *Id.* at 412.

The Crimes Code defines conspiracy as follows.

(a) Definition of conspiracy.-- A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another … to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.[C.S.] § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.

Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to

establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Dunkins*, 229 A.3d 622, 632 (Pa. Super. 2020). While a piece of circumstantial evidence may be insufficient on its own, when viewed together with other evidence and in context, circumstances "may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Carter*, 416 A.2d 523, 524 (Pa. Super. 1979).

The Commonwealth also sought to adjudicate Appellant delinquent under a theory of accomplice liability. N.T., 9/23/19, at 22–23. "Accomplice liability does not create a new or separate crime; it merely provides a basis of liability for a crime committed by another person." *Commonwealth v. Gross*, 101 A.3d 28, 35 (Pa. 2014) (citing 18 Pa.C.S. § 306). Unlike the crime of conspiracy, no agreement is required for accomplice liability, only aid. *Commonwealth v. Adams*, 39 A.3d 310, 324 (Pa. Super. 2012). "In order to sustain a conviction based on accomplice liability, the

Commonwealth must demonstrate that an individual acted with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense." ***Commonwealth v. Le***, 208 A.3d 960, 969 (Pa. 2019).

"As with conspiracy, a shared criminal intent between the principal and his accomplice may be inferred from a defendant's words or conduct or from the attendant circumstances." ***Id.*** However, "a person cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the person intended to aid in the commission of the underlying crime, and then aided or attempted to aid." ***Commonwealth v. Rega***, 933 A.2d 997, 1015 (Pa. 2007).

With that legal background in mind, we turn to the factual findings and the analysis offered by the juvenile court to support the adjudication. Based on its review of the video, the juvenile court found that Appellant:

> observed [Holt] on his phone, went to the other defendants[,] and they looked over at [Holt]. [Appellant] walks up multiple times and keeps looking back at [Holt]. [Appellant] walks back over to [Holt], makes an observation of the area[,] and steps aside as the other males approach and attack [Holt]. [Appellant] walked past empty seats to purposely stand next to [Holt]. [Appellant] then moves into a position to block [Holt] from leaving the scene. When [Holt] attempted to repel the attack, [Appellant] was the first to stand in his way.

Juvenile Court Opinion, 2/13/20, at 2 (citations omitted).

Based upon this evidence, the juvenile court concluded the following regarding conspiracy.

> [Appellant] was not merely present. [Appellant] can clearly be seen scoping the victim, coordinating the efforts of his co-conspirators, moving back into position to block [Holt's] possible escape route, moving aside to allow the group to attack [Holt], and confronting [Holt]. Viewing all the facts and evidence presented at [the adjudicatory hearing], it is obvious to this court that the web of evidence is sufficient to sustain a conviction.

*Id.* at 6 (citations and quotation marks omitted). Likewise, the juvenile court determined there was sufficient evidence to support Appellant's liability as an accomplice because "[t]he video evidence clearly showed [Appellant] promoting, participating in the planning, and staging of the crime." *Id.* at 7–8.

Our review of the video confirms it supports the juvenile court's conclusions. In the first clip of the video, Holt is sitting in a seat with his head against the window, looking down at his phone. A group of teenagers are standing in the aisle slightly behind Holt's seat. One of the teenagers, who has a black hood pulled up and later punches Holt, stands in the aisle in front of Holt before walking back to the group. Next, Appellant emerges from the group and walks up the aisle in front of Holt, who is still engrossed in his phone. While standing in the aisle with his hand on the pole connected to the seat in front of Holt, Appellant looks over at Holt.

Appellant walks back up the aisle, rejoins the group, and appears to be talking to the group.

Appellant returns to the aisle near Holt's seat. He puts his hands on the same pole as before as well as the pole immediately across the aisle and he again looks at Holt. Another of the teenagers, who has his navy hood pulled up, moves forward to stand between Appellant and the pole connected to the seat in front of Holt. The group appears to have the aisle around Holt's seat blocked. Suddenly, several of the teenagers, including the two wearing the black and navy hoods, swarm Holt and punch him in the head, attempt to grab his phone, and punch Holt several more times. Appellant remains in the aisle and does not touch Holt. When Holt rises to his feet, most of the group scatters and runs off the train, but Appellant lingers in the aisle while looking directly at Holt. Appellant then exits the train with a smile on his face and claps his hands as he steps off the train.

Viewing the video "in the light most favorable to the Commonwealth" and "draw[ing] all reasonable inferences therefrom," as we must, "there is sufficient evidence to find every element of the crime charged." *In re V.C.*, 66 A.3d at 348–349. That the evidence is circumstantial and rests on an interpretation of Appellant's movements does not render the juvenile court's conclusions speculation or conjecture. In context with the actions of other members of the group and the timing, we agree with the juvenile court that Appellant's movements are not ambiguous. The video shows Appellant

interacting with the group before and during the attack. Appellant, several times before the assault, moves away from the group to stand by Holt, looks at Holt, and re-joins the group. Other members of the group engage in similar behavior, and one of the attackers stands very close to Appellant while Appellant has the aisle blocked immediately before the attack. Appellant's movements between Holt and the group and his observation of Holt reasonably appear to be scoping and planning, particularly because the attack occurs immediately thereafter. After the attack, Appellant lingers while looking directly at Holt, reasonably indicating that he was blocking Holt from following the attackers. Furthermore, his facial expression and hand clapping shows he was pleased by the attack. *See Commonwealth v. Wallace*, 244 A.3d 1261, 1274 (Pa. Super. 2021) (noting proof of acts and circumstances subsequent to the crime may be relevant to prove the conspiracy). Therefore, we disagree with Appellant's argument that the evidence showed he was merely present at the scene. Instead, the evidence shows Appellant agreed to rob and assault Holt, and he aided the group in doing so.

Because the Commonwealth introduced sufficient evidence to support Appellant's adjudication of delinquency based upon all elements of the charged crimes, we affirm the dispositional order.

Dispositional order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/14/21