J-S36021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN ORTIZ-CARR | : | |
| | : | |
| Appellant | : | No. 2205 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 13, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000158-2019

BEFORE:   LAZARUS, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 2, 2022**

John Ortiz-Carr appeals from the judgment of sentence, entered in the Court of Common Pleas of Chester County, following his conviction of second-degree murder,[1] robbery (serious bodily injury),[2] and related charges.[3] After careful review, we affirm in part, vacate in part, and remand.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(b).

[2] 18 Pa.C.S.A. § 3701(a)(1)(i).

[3] The jury also convicted Ortiz-Carr of robbery (fear of immediate serious bodily injury), 18 Pa.C.S.A. § 3701(a)(1)(ii); robbery (bodily injury-object: controlled substance), 18 Pa.C.S.A. § 3701(a)(1)(iv); robbery (force however slight-objective: controlled substance), 18 Pa.C.S.A. § 3701(a)(1)(v); theft by unlawful taking or disposition (value:not less than $200 nor more than $2,000), 18 Pa.C.S.A. § 3921(a); **criminal conspiracy (objective: robbery)**, 18 Pa.C.S.A. § 903(a)(1), (2); and **criminal conspiracy (objective: theft)**, 18 Pa.C.S.A. § 903(a)(1), (2).  In her Pa.R.A.P. 1925(b)
*(Footnote Continued Next Page)*

Following a six-day trial, a jury convicted Ortiz-Carr of the abovementioned offenses for his role in the December 27, 2017 shooting death of fifteen-year-old Jason Ortiz-Cameron in the parking lot of a Dunkin' Donuts in Phoenixville, Chester County. The victim was killed during the robbery of a drug dealer. Ortiz-Carr was tried jointly with Brian Corsey, Jr. (Corsey), the alleged triggerman and one of Ortiz-Carr's two co-conspirators. The other co-conspirator, Robert McCoy (McCoy), testified at the trial.[4] On November 13, 2020, the court sentenced Ortiz-Carr to mandatory life in prison without the possibility of parole.[5]

---

opinion, the Honorable Allison Bell Royer stated that "there was only one conspiracy here, albeit one with multiple criminal objectives." Trial Court Opinion, 6/1/21, at 39. "[Ortiz-Carr] should not have been convicted of two (2) conspiracies. Because the confederates' shared criminal intent anticipated the use of force to accomplish the objectives of the conspiracy, [Ortiz-Carr's] conviction for Conspiracy to Commit Robbery should stand while his conviction for Conspiracy to Commit Theft by Unlawful Taking should be vacated." *Id.* *See* 18 Pa.C.S.A. § 903(c) ("If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship."). *See also Commonwealth v. Rivera*, 238 A.3d 482 (Pa. Super. 2020) (vacating improper conviction is appropriate remedy for violation of 18 Pa.C.S.A. § 903(c)). Because the court did not impose a sentence on the conviction of conspiracy to commit theft by unlawful taking, the sentencing scheme is not disturbed. Thus, we need not remand for resentencing after vacating that conviction.

[4] McCoy entered a guilty plea to third-degree murder and conspiracy to commit robbery. *See* N.T. 9/24/20, at 645.

[5] On his conviction for criminal conspiracy (objective: robbery), the court sentenced Ortiz-Carr to a term of five-to-ten years' confinement, to run concurrently with his life sentence on the second-degree murder conviction. *(Footnote Continued Next Page)*

At the conclusion of the sentencing hearing, Ortiz-Carr stated that he wished to appeal and wanted to contest trial counsel's effectiveness. Counsel informed the court that he would file a notice of appeal to protect Ortiz-Carr's direct appellate rights but asked the court to appoint new counsel for direct appeal. No post-sentence motions were filed.

Counsel filed a timely notice of appeal on behalf of Ortiz-Carr. The court subsequently granted counsel's request to withdraw and appointed new counsel to represent Ortiz-Carr on appeal. Both the trial court and Ortiz-Carr complied with Pa.R.A.P. 1925.

After our review, we affirm in part and vacate in part. As the Honorable Allison Bell Royer noted in her comprehensive opinion, because the vacatur of Ortiz-Carr's conviction of conspiracy to commit theft by unlawful taking does not affect the sentencing scheme, *see supra* at n. 3, we need not remand for a new sentencing hearing.

Ortiz-Carr raises the following issues on appeal:

(1)   Was trial counsel ineffective: (a) for failing to object to the racial composition of the jury; and, (b) for failing to adequately cross-examine the cooperating witness/co-defendant (1) regarding his interest in the outcome of the case and/or (2) regarding the fact that he was then facing a maximum penalty of twenty (20) years in prison, as opposed to life in prison, due to his agreement with the Commonwealth to withdraw the charge of [s]econd[-]

---

All other convictions were deemed to merge, and no sentences were imposed with respect to those convictions. Thus, Ortiz-Carr's aggregate sentence is life imprisonment.

degree [m]urder against the planner of the robbery that led to the homicide at bar?

(2) Was the evidence insufficient to prove beyond a reasonable doubt that [Ortiz-Carr] was guilty as charged of [c]onspiracy, as there was no direct evidence that [Ortiz-Carr] agreed to participate in an armed robbery or an intentional shooting by a co-defendant with that co-defendant's firearm?

Appellant's Brief, at 7.

Ortiz-Carr's ineffectiveness claims are premature. We dismiss those claims without prejudice so that Ortiz-Carr may seek relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. *See* *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013) (reaffirming holding in *Commonwealth v. Grant*, 813 A.3d 726 (Pa. 2002), that claims of ineffective assistance of counsel generally deferred to PCRA review).

In his second issue, Ortiz-Carr challenges the sufficiency of the evidence for criminal conspiracy, claiming there is "no direct evidence that [he] agreed to participate in an armed robbery or an intentional shooting by a co-defendant[.]" Appellant's Brief, at 7. Ortiz-Carr argues that although he may have agreed to take marijuana from the decedent without paying, and by force "if necessary, " N.T. Jury Trial, 9/24/20, at 653, "there was no evidence that [he], along with McCoy, the testifying co-conspirator, knew why co-defendant [Brian] Corsey exited the vehicle in which they arrived at the Phoenixville Dunkin' Donuts, went to the trunk, and came back." *Id.* at 949. Ortiz-Carr contends that there was "no proof that [Ortiz-Carr] knew of [Corsey's] firearm in the trunk of the car[, and t]here was no proof that [Ortiz-Carr]

- 4 -

urged, encouraged or agreed that [] Corsey would use a firearm, much less fatally shoot anyone during the marijuana robbery." Appellant's Brief, at 14.

> In reviewing a sufficiency claim, we [] consider [the] evidence in a light most favorable to the Commonwealth, drawing all reasonable inferences in favor of the Commonwealth. The evidence need not preclude every possibility of innocence and the factfinder is free to believe all, part, or none of the evidence presented. Only where the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,] is a defendant entitled to relief. We do not re-weigh the evidence and substitute our judgment for that of the factfinder. As the question of the sufficiency of the evidence is one of law, we consider the evidence *de novo*.

*Commonwealth v. Mitchell*, 135 A.3d 1097, 1101 (Pa. Super. 2016) (citations and quotations omitted). "Both direct and circumstantial evidence can be considered equally when assessing the sufficiency of the evidence." *Commonwealth v. Price*, 616 A.2d 681, 683 (Pa. Super. 1992) (citation omitted).

In order to prove criminal conspiracy, the Commonwealth must demonstrate that the defendant: "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Chambers*, 188 A.3d 400, 410 (Pa. 2018), *citing Commonwealth v. Rios*, 684 A.2d 1025, 1030 (Pa. 1996); 18 Pa.C.S.A. § 903. Once the conspiracy is established beyond a reasonable doubt, a conspirator can be convicted of both the conspiracy and the substantive

offense that served as the illicit objective of the conspiracy. *Chambers*, 188 A.3d at 410.

Among the circumstances that are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. *See Commonwealth v. Carter*, 416 A.2d 523, 524 (Pa. Super. 1979) (presence of such circumstances may furnish 'web of evidence' linking accused to alleged conspiracy beyond reasonable doubt when viewed in conjunction with each other and in context in which they occurred). *See also Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa. Super. 2005) (same).

Instantly, the evidence established that McCoy recruited Ortiz-Carr and Corsey to join him in robbing Thomas Ferrell, a drug dealer, of marijuana, by force "if necessary." N.T. Jury Trial, 9/24/20, at 642-45, 653. The three men discussed this plan at the Pottstown home of a drug addict named "Dave." *Id.* at 630, 635, 638-45. Devin Stevens (Stevens) was present when the three discussed this plan, and he testified that McCoy brought a gun along. *Id.*, 9/22/20, at 130-31, 145-47.[6] Stevens also testified that he heard Ortiz-Carr tell McCoy before they left to "make sure it's worth it." *Id.*

---

[6] In a prior recorded statement from a police interview, Stevens stated that Corsey brought the firearm. *Id.* at 143-47.

McCoy drove Corsey's car to the Dunkin' Donuts, the arranged meeting place. Ortiz-Carr sat in the front passenger seat of the vehicle, and Corsey sat in the back seat. *Id.* at 647.

Meanwhile, Ferrell had recruited some teenagers to accompany him on the drug deal, one of whom was the victim. Ferrell gave the bagged marijuana to the victim and, when they arrived at the Dunkin' Donuts, they devised a plan to rob the buyer (McCoy) and run, instead of selling him the marijuana. *Id.*, 9/23/20, at 282-84; *Id.*, 9/24/20, at 741-42.

When McCoy, Corsey and Ortiz-Carr arrived at the Dunkin' Donuts, McCoy backed the car into a parking space "so it would be easier to drive away." *Id.* at 648. McCoy contacted Ferrell, the seller, and told him he was at the meeting place. *Id.* McCoy testified that, at that point, Corsey got out of the car, went to the trunk, and came back. *Id.* at 649. McCoy stated he did not know why Corsey went to the trunk. *Id.*

When Ferrell and the victim arrived, McCoy testified that neither showed him the marijuana, that he asked Ferrell to get into the car, but Ferrell did not want to because he thought things were "sketchy." *Id.* at 653-54. At that point, Ferrell and the victim "walked away." *Id.* at 654. Corsey got out of the car to talk to Ferrell and the victim, and then Corsey, Ferrell and the victim walked back to the car. *Id.* at 654. McCoy stated that he then got out of the car to meet them, and all four of them walked back to the car. *Id.* at 655. McCoy testified he told Ortiz-Carr to get into the driver's seat, and Ortiz-Carr did so. *Id.* at 656-57. McCoy stated that he asked Ferrell to show him the

marijuana, *id.* at 655-56, and then he heard Corsey say to the victim, "[G]ive me everything you got." *Id.* at 659. The next thing McCoy heard was a "pop," which he recognized as a gunshot. *Id.* at 660. The victim was shot in the face at close range. McCoy testified that he ran back to the car and got into the front passenger seat; Corsey got into the back seat and Rodriguez-Carr drove the car away. *Id.* at 661-62.

McCoy testified further:

Q:    And was this the type of scenario you were worried about when you asked him to get into the driver's seat?

A:    Yeah.

Q:    And this is what you talked about with him?

A:    I mean, not specifically, but, I mean, just in case, yeah, I guess that's a wide variety of anything.

Q:    Well --

A:    So yes.

Q:    Well, you were going to rob somebody. Isn't that right?

A:    Yes.

Q:    Somebody with drugs, right?

A:    Yes.

Q:    Is it fair to say things can go sideways really quickly?

A:    Yes.

*Id.* at 662.

McCoy then testified that when they arrived back at Dave's house in Pottstown, Corsey had the marijuana and the three of them split it up. *Id.* at 666.

Contrary to Ortiz-Carr's argument, direct evidence is *not* necessary to establish conspiracy beyond a reasonable doubt. "A conspiracy is almost always proved through circumstantial evidence." **Commonwealth v. Lambert**, 795 A.2d 1010, 1016 (Pa Super. 2002). **See also Commonwealth v. Murphy**, 795 A.2d 1025, 1037–38 (Pa. Super. 2002) (conspiracy may be inferred where it is demonstrated that relation, conduct, or circumstances of parties, and overt acts of co-conspirators sufficiently prove formation of criminal confederation; conduct of parties and circumstances surrounding conduct may create "web of evidence" linking accused to alleged conspiracy a reasonable doubt); **Commonwealth v. Morton**, 512 A.2d 1273, 1275 (Pa. Super. 1986) (same). "Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy." **Murphy**, 795 A.2d at 1038, quoting **Commonwealth v. Johnson**, 719 A.2d 778, 784–85 (Pa. Super. 1998) (en banc).

In this appeal, Ortiz-Carr does not dispute entering the conspiracy charged. He argues that the felony-murder doctrine should not apply because the murder was not in furtherance of the conspiracy. In **Lambert**, **supra**, we explained:

> The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy **regardless of their individual knowledge of such actions and regardless of which member of the conspiracy**

**undertook the action**. . . . The premise of the co-conspirator rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, **regardless of whether they actually intended any distinct act undertaken in furtherance of the object of the conspiracy.** It is the existence of shared criminal intent that is the *sine qua non* of a conspiracy.

795 A.2d at 1016-17 (citations and quotations omitted; emphasis added).

*See also Commonwealth v. Wayne*, 720 A.2d 456, 463–464 (Pa. 1998).

With these principles in mind, and viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude that the Commonwealth established beyond a reasonable doubt that Ortiz-Carr entered an agreement to take Ferrell's marijuana, by force if necessary, that they shared this criminal intent to use unlawful force, and that McCoy's driving the car, with Ortiz-Carr and Corsey as passengers, as well as the co-conspirator's subsequent acts, including the murder and leaving the scene, constituted overt acts in furtherance of the conspiracy. A jury could conclude beyond a reasonable doubt that Ortiz-Carr was aware that the plan was to take the marijuana by force, and the jury could reasonably infer that the use of a firearm was contemplated. "Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy." *Johnson*, 719 A.2d at 784-85. Ortiz-Carr is criminally liable regardless of whether any of the co-conspirators actually intended any distinct act undertaken in furtherance of the object of the conspiracy. *Lambert*, *supra*.

The statute defining second-degree murder does not require that a homicide be foreseeable; rather, it is only necessary that the accused engaged in conduct as a principal **or an accomplice in the perpetration of a felony.** Whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony here, robbery, is "a difficult question." ***Commonwealth v. Laudenberger***, 715 A.2d 1156, 1160 (Pa. Super. 1998). That question, however, is one of fact for the jury to resolve. ***See Commonwealth v. Middleton***, 467 A.2d 841, 848 (Pa. Super. 1983). Instantly, Ortiz-Carr, Corsey and McCoy were present at the Dunkin' Donuts to rob Ferrell. The fact that Corsey took matters into his own hands is inconsequential. "It does not matter whether the appellant anticipated that the victim would be killed in furtherance of the conspiracy. . . . Rather, the fact-finder determines whether the appellant knew **or should have known that the possibility of death accompanied a dangerous undertaking**." ***Id.*** (citations omitted; emphasis added).

This web of evidence is woven together by virtue of Ortiz-Carr's association with McCoy and Corsey, his knowledge of what was to take place, his presence at the scene, his act of driving his two co-conspirators from the scene of the crime, his participation in the object of the conspiracy by supporting the commission of the robbery and his sharing in the proceeds of that crime. The plan contemplated the use of force, and the ensuing killing of the victim was an act in furtherance of the agreement, Ortiz-Carr's lack of knowledge or anticipation notwithstanding. We conclude the evidence was

sufficient to support the jury's verdict that Ortiz-Carr was guilty of second-degree murder. This Court will not re-weigh the evidence and substitute our judgment for that of the factfinder. ***Mitchell***, ***supra***. ***See also Commonwealth v. Johnson***, 838 A.2d 663 (Pa. 2003) (jury bears responsibility to resolve questions of credibility; absent extraordinary circumstances, appellate court will not substitute its judgment for that of factfinder).

Judgment of sentence affirmed; case remanded for vacatur of conspiracy to commit theft by unlawful taking conviction. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/02/2022